JACOB LORILLARD and RACHEL A. VAN BUSKIRK, appellants,

v.

THE KEYPORT BRICK AND TILE MANUFACTURING COM-
PANY, respondent.

On appeal from a decree advised by Vice-Chancellor Bird,
in *Keyport Brick and Tile Manufacturing Co.* v. *Lorillard*, who
filed the following conclusions:

Rachel Van Buskirk, one of the defendants, was the owner of
a large tract of land. She executed and delivered a lease for
about twenty-five acres of it to the Union Brick and Tile Com-
pany, which company filed the bill of complaint in this cause.
This company became insolvent, and a receiver was appointed to
take charge of its assets, through whom title was made to the
present complainant. In the lease, which bears date March 24th,
1882, were two provisions which must be considered in deter-
mining the present controversy, the first of which is in these
words, viz.:

"To have and to hold the said premises for the term of twenty years and
two months from the first day of March, A. D. eighteen hundred and eighty-
two, paying therefor the yearly rent of five hundred dollars ($500), as follows:
Eighty-three 33–100 dollars upon the execution of this lease, which will be in
full for rent to May 1st, A. D. 1882, and thereafter the sum of one hundred and
twenty-five dollars on the first day of May, August, November and February
in each year of said term, and during the continuance of this lease."

And the second is in these words, viz.:

"That the said company is to have the privilege of buying the aforesaid
premises at any time within five years from the commencement of this demise,
at the price or sum of seven thousand dollars, but such privilege is given upon
the conditions that all rents due is first paid, and the other agreements herein
of said company first performed."

On the 15th day of February, 1887, Mrs. Van Buskirk con-
veyed all her right and interest in the entire tract of land to the

defendant Lorillard, subject to the said lease, expressly mentioning in the conveyance the clause giving the right to the said company to purchase.

The complainant shows by its bill that it exercised this right of purchase by tendering the $7,000, and by demanding a deed within the time described by the agreement named in the lease, according to its interpretation of the lease. The defendant admits the tender by his answer and the demand of the deed, but denies that it was within the time required, and insists that this is fatal to the complainant's claim, because in such cases time is of the essence of the contract.

The complainant also claims that in case the tender and demand were not within the time specified in the contract, the defendant is not permitted to object on that ground, because by his conduct and declarations he waived any right he might have had to make such defence, and sets forth in its bill various circumstances in support of such waiver. An answer is called for under oath, and Lorillard by his answer denies many of the principal statements which are relied upon to establish the waiver.

The tender and demand were made upon the 24th day of March, 1887, five years after the date of the execution of the lease. It will be perceived that the clause which gave the company the option of purchasing does not say within five years from the date, but within five years from the commencement of the demise, and in the first provision above quoted it is declared that the company shall have and hold the said premises for the term of twenty years and two months from the 1st day of March, 1882. Hence the insistment on the part of Lorillard that the five years expired on the 1st day of March, 1887, and not on the 24th; in his mind the words "term" and "demise" were equivalent terms, and used in the same sense by the parties

The complainant endeavors to establish the correctness of his views by urging that the demise was a present demise, and that the time referred to was to be extended five years from that date, and that the reference to the antecedent period was only referred to for the purpose of the computation of time. In-

Lorillard v. Keyport Brick and Tile Manuf. Co.

··dependently of the authorities referred to, it seems to me extremely difficult to sustain the complainant's claim. In my judgment, the contracting parties used the word "demise" in the same ·sense in which they had used the word "term" previously. Had their minds been fixed upon the date of the lease, it would ·have been infinitely more natural and business-like for them to have said "from the date of this ·lease," or, if they intended to ·refer to the lease as a demise, to have said, "from the date of ·this demise." Had the contract provided that the term should begin on the 1st day of April then next ensuing, and that the option to purchase might be exercised within five years from the ·commencement of the demise, doubtless the complainant would ·have said that the latter clause referred to the time when its ·rights as lessee might be first exercised in the possession and dominion over the property. And had the present lease provided that the lessee should have the right to take and convert ·to his own use all the green grain and growing crops, and all the timber, wood and rails being upon the said premises "at the ·commencement of the demise," and there had been growing valu.able crops and timber, wood and rails, the said lessee doubtless ·would have claimed, and justly, all such personal property. That the parties really had in their minds the 1st day of March is shown by the fact in the lease itself, that the rent was not only reserved and made payable from the 1st day of March, but was actually paid from that date. This shows conclusively that the period of time which the parties regarded as significant, and to which their minds were directed, was the 1st day of March.

In support of his views, counsel for complainant refers to *Tayl. Land. & T. p. 50* ¶ *78 and notes; Enys* v. *Donnithorne, 2 Burr. 1190; Weber* v. *Dixon, 9 East 15; Folts* v. *Huntley, 7 Wend. 215; Jaqui* v. *Johnson, 11 C. E. Gr. 321.* In my judgment these authorities cannot be applied to the case in hand, nor are they in any sense in conflict with the views above expressed.

This being so, the defendant Lorillard insists that the company was in laches in not exercising its option and making demand .of a conveyance and tendering the consideration money on or be-

fore the 1st day of March. He presses the point that, in all unilateral contracts, time is of the essence of the contract.

But in the consideration of such questions from an equitable standpoint, the doctrine of waiver always performs an important part, and the conduct of Lorillard tends strongly to give countenance to the insistment of the complainant that he cannot claim any benefit from the supposed laches of the company, he having, to some extent at least, encouraged such laches. I have not any doubt but that all parties interested understood and believed that the period of time within which the company had the right to comply expired on the 24th day of March, 1887. On the 25th day of February, Mr. Gallop, an officer of the company, called upon Mr. Lorillard, and asked him to consent to the extension of the time for two years beyond the 24th day of March then next ensuing. This was only ten days after Mr. Lorillard purchased, when his mind must have been still fresh with the provisions of his deed with reference to the rights of the company to purchase. Such officer says that Mr. Lorillard told him he could not give him an answer at that time because another person was interested with him, but would let him know within two weeks. He says that he then urged him to let him know within ten days, and that Mr. Lorillard promised him that he would do so at the end of ten days. On the 7th of March, the day agreed upon between the parties, as Gallop says, Gallop called on Lorillard for the purpose of having his answer. He says Lorillard then told him that there could be no extension of time, and that the money must be paid on the 24th of March. The important statements in connection with these interviews are denied by Lorillard, both in his answer under oath and in his testimony as a witness. He says that at the first interview he told Gallop that by its terms the contract was to be performed on the 1st day of March. The inference is, from his testimony, that he made no appointment on the 7th of March, but I think, if he intended to be so understood, the circumstances of the case show that he must have forgotten what actually took place, for the company seemed to rely upon such promise. From its conduct, it evidently intended to exercise its option and secure the title to

the property.   One of its officers was not only deputed to have
a conference with Lorillard on the 25th of February for the pur-
poses above stated, but called upon him again upon the 7th of
March.   There is no possible explanation or reason for this
second interview to be gathered from any branch of the case, ex-
cept upon the theory advanced by the complainant.   And this
second interview could only have been had by the consent or
connivance of Lorillard, and by his appointment; or, if not by
his direct appointment, by his consent thereto on the 25th of
February.

In my judgment, the fact that Lorillard consented to this inter-
view, and did not steadfastly insist upon the claim which he says
he made that the contract required performance on the 1st day of
March, turns the scales against him.   That he did so consent is
not only shown by the testimony of Gallop, but by the testimony
of Lawton, another officer of the company, who was well ac-
quainted with Lorillard, and by Lorillard's own conduct there-
after; for on March 12th Lawton called on Lorillard with
respect to this matter, and Lorillard promised him that he would
have the deed prepared for the premises and executed by himself
and wife that very day, and that he would place it in the hands
of his clerk or agent, who was then present, with authority to
deliver it on the 24th, upon the payment of the consideration
money.   The clerk was thus referred to and authorized because
Lorillard expected to be absent.   He prepared such deed, and had
it executed, and left it with the agent accordingly, with instructions
to deliver it unless it was ascertained that he was not obliged to
deliver it.   His counsel informed the agent that he was not
obliged under the terms of the option to deliver the deed.

Counsel for Lorillard contends that if the elements of a waiver
exists in these facts—that is, that one of the officers called upon
Lorillard, and he agreeing to meet with him for further consid-
eration of the matter after the 1st day of March, and their hav-
ing such meeting, and after these interviews his promising another
officer of the company to prepare a deed ready to be delivered
upon the 24th of March, upon the payment of the $7,000—that
said waiver was made by him in ignorance of his legal rights,

The case shows that he was no more ignorant of his legal rights than was the company of its legal obligations. The insistment admits that he supposed the fact to be precisely what the company supposed it to be. This being so, and both acting upon the supposition, it would be the height of injustice to allow either party to take advantage of the other. Undoubtedly the mistake was a mutual one. This being so, since neither party has changed his situation for the worse, each must be held to the same obligation, and each enjoy the same rights, as though both had understood that the option was to be exercised on the 1st day of March. I speak with reference to this case, and do not mean to hold that in every such case where the parties misunderstand the legal effect of an instrument, and put an interpretation different from what the courts would enforce under the law, that thereby Lorillard was deprived of his legal rights, or that he is bound by his misunderstanding. Where both parties are under such misapprehension and remain silent and inactive, neither can claim anything of the other because of such mistake. *Hunt* v. *Rousmaniere, 1 Pet. 1; 2 Pom. Eq. Jur.* § *846.* But in this case Lorillard went so far as to justly encourage the belief on the part of the company that the contract did not require them to exercise their option until March 24th; and I think this gives it a right in equity which it otherwise would not have enjoyed. To sustain Lorillard would be giving to him an advantage acquired by his own wrongful conduct, which evidently a court of equity ought not to encourage. See *2 Pom. Eq. Jur.* § *847.* By his conduct in preparing the deed and by his assurances to Lawton on the 12th of March, Lorillard recognized the contract as still subsistent. This, I think, binds him to a fulfillment of the contract. *Waterm. Spec. Perf.* § *480.*

But an important fact remains to be noted. Counsel for Lorillard laid no little stress upon what he considered to be a fact, that Lorillard supposed the agreement gave the company the right to exercise its option on or before March the 24th, but that in that supposition he was in error. As intimated above, the conduct of the parties leads me to the conclusion that both were under the same apprehension. However, I now call attention to the

Lorillard v. Keyport Brick and Tile Manuf. Co.

fact that Lorillard swears that he told Gallop, February 25th, that the contract provided for the performance on March 1st, and not on the 24th. If this be correct, and such was his understanding, then there was no error on his part; from which fact it must be inferred that what he did afterwards he did understandingly, and was treating with the other side with reference to an extension of time, and recognizing the existence of the contract, and so liable to be called upon for specific performance.

I think the complainant is entitled to the relief for which it prays, and will so advise. It is also entitled to costs.

*Mr. Gilbert Collins,* for the appellants.

*Mr. William H. Vredenburgh,* for the respondent.

PER CURIAM.

The court concurs in the construction of the testimony expressed by the vice-chancellor, and on that ground affirms the decree.

No opinion is expressed with respect to the force to be given to the language of the lease.

*For affirmance*—THE CHIEF-JUSTICE, DEPUE, DIXON, GARRISON, KNAPP, MAGIE, REED, SCUDDER, VAN SYCKEL, BROWN, SMITH, WHITAKER—12.

*For reversal*—None.